NORTH CAROLINA

DAVIDSON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23 CVS 660

MATTHEW DRAKE WILLIAMS, Administrator )
of the Estate of SUNSHINE NICHOLE WILLIAMS,)
Deceased, )
                           )
                   Plaintiff, )
                           )
vs.                             )
                           )
UBER TECHNOLOGIES, INC.; PORTIER, LLC; )
and PROGRESSIVE INSURANCE COMPANY, )
                           )
                Defendants. )

## **COMPLAINT**

PLAINTIFF, complaining of Defendants, alleges and says:

### **IDENTIFICATION OF PARTIES**
### **AND**
### **STATEMENT OF JURISDICTION**

1.      Plaintiff is a resident of Davidson County, North Carolina. At all times pertinent to

the allegations of this complaint, Plaintiff was and continues to be the duly appointed and authorized

Administrator of the Estate of Sunshine Nichole Williams which is pending before the Clerk of the

Superior Court of Davidson County, North Carolina.

2.      Defendant Uber Technologies, Inc., hereinafter referred to as "Defendant Uber," is a

corporation which is organized and existing pursuant to the laws of the State of Delaware, and its

principal place of business is located in San Francisco, California. At all times pertinent to the

allegations of this complaint, Defendant Uber was authorized to do business in the State of North

Carolina.

1

3.      Defendant Portier, LLC, hereinafter referred to as "Defendant Portier," is a limited liability company organized and existing pursuant to the laws of the State of Delaware, and its principal place of business is located in San Francisco, California. At all times pertinent to the allegations of this complaint, Defendant Portier was authorized to do business in the State of North Carolina.

4.      Upon information and belief, Plaintiff alleges and says that Defendant Portier is a wholly owned subsidiary of Defendant Uber which is responsible for hiring and managing individuals who work as independent contractors using a technological application (hereinafter referred to as "the app") through which they login and logout indicating that they are available and willing to be dispatched on behalf of clients of Defendants Uber and Portier to pick up food which had been ordered and to deliver such food to the clients at requested addresses. At all times pertinent to the allegations of this complaint, Defendant Portier operated and did business in the State of North Carolina as UberEats.

5.      Defendant Progressive Insurance Company, hereinafter referred to as "Defendant Progressive," is a corporation organized and existing pursuant to the laws of the State of Ohio, and its principal place of business is located in Highland Heights, Ohio. At all times pertinent to the allegations of this complaint, Defendant Progressive was authorized to do business in the State of North Carolina, and it was subject to regulation by the North Carolina Department of Insurance.

6.      The Superior Court of Davidson County has jurisdiction over the subject matter of this action and the parties hereto pursuant to the provisions of G.S. §§ 1-75.1 *et seq*. Venue is proper in proper in Davidson County pursuant to G.S. § 1-82.

## <u>GENERAL FACTUAL ALLEGATIONS</u>

7.      Plaintiff is the widower of the late Sunshine Nichole Williams who was killed on or

2

about September 17, 2022 in an automobile accident in Guilford County, North Carolina.

8.      In addition to Plaintiff, Decedent was survived by two minor children, a daughter named Kaylee, and a son named Malikai.

9.      On or about October 5, 2022, Decedent qualified before the Clerk of the Superior Court of Davidson County as Administrator of the Estate of Sunshine Nichole Williams, and he was duly issued letters of administration authorizing him to administer the Decedent's estate in all respects. As Administrator of the Estate of Sunshine Nicole Williams, Plaintiff has full authority under the provisions of Chapter 28A of the North Carolina General Statutes to bring this action on behalf of the Decedent's estate.

10.     For a period of time prior to Decedent's death whose length is presently unknown to Plaintiff, Decedent was affiliated with Defendants Uber and Portier as an independent contractor who would make it known to such Defendants through the app that she was available to be dispatched on behalf of clients of such Defendants to pick up food which had been ordered and to deliver such food to the clients at requested addresses.

11.     Independent contractors of Defendants Uber and Portier were required to log into the app using a unique password and by satisfying other security measures. Once an independent contractor was logged into the app, Defendants Uber and Portier would know in real time if the independent contractor was available to be dispatched, waiting to be dispatched, was enroute to a location to pick up a food order, or was enroute to a location to make a delivery.

12.     Independent contractors of Defendants Uber and Portier are paid a base fee for each pick-up and delivery which they make. In addition, depending upon how far an independent contractor is required to drive in order to pick up and deliver an order, Defendants Uber Eats and Portier will pay a trip supplement to the independent contractor.

3

13.     Independent contractors of Defendants Uber and Portier are required to provide their own means of transportation, a cellular telephone which will enable the independent contractor to login to and use the app, and automobile liability insurance in an amount sufficient to satisfy a given state's minimum coverage requirements.

14.     Under the contract required of independent contractors by Defendants Uber and Portier, when a driver is offline or the app is otherwise turned off, the independent contractor's personal automobile liability policy applies to provide coverage in the event of an accident.

15.     Upon information and belief, Plaintiff alleges and says that the insurance provided by Defendants Uber and Portier provides coverage if the independent contractor is logged into the app but has not received and accepted a dispatch request. Upon information and belief, Plaintiff alleges and says that, in such an instance, the insurance so provided has the following limits: $50,000 in bodily injury per person, $100,000 in bodily injury per accident, and $25,000 in property damage per accident. Such coverage is reasonable and necessary given that most private automobile liability policies do not provide coverage when an otherwise covered motor vehicle is being used for commercial or business purposes.

16.     Upon information and belief, Plaintiff alleges and says that Defendants Uber and Portier, in accord with the terms and conditions of the contract under which the independent contractors performed services, maintain auto insurance with higher limits than those set forth in paragraph 15 above on behalf of an independent contractor who is enroute to pick up or deliver an order initiated through the app. Upon information and belief, Plaintiff alleges and says that such additional coverage is not provided for independent contractors who are signed into the app and who are available for dispatch, but who are not then enroute to pick up or deliver an order after having accepted a dispatch. Upon information and belief, Plaintiff alleges and says that such

4

insurance has the following limits: $1,000,000 third-party liability insurance, $1,000,000 uninsured/underinsured coverage, and the actual cash value of the independent contractor's vehicle, subject to a deductible. Upon information and belief, Plaintiff alleges and says that such coverage was in effect and applied to Decedent at all times pertinent to the allegations of this complaint.

17.     Upon information and belief, Plaintiff alleges and says that Defendants Uber and Portier contracted with Defendant Progressive, among other carriers, to provide coverage for its independent contractors in accord with the terms and conditions of the contract under which the independent contractors performed services as the same is set forth in paragraphs 15 and 16 above.

18.     Upon information and belief, Plaintiff alleges and says that on or about September 17, 2022 at approximately 1:30 p.m., Decedent was logged into the service app, and she was ready, willing, and able to accept a dispatch through the app for the purpose of picking up and delivering food which had been ordered by a customer of Defendants Uber and Portier.

19.     Upon information and belief, Plaintiff alleges and says that, on September 17, 2022 at a specific time subsequent to 1:30 p.m. but prior to 2:13 p.m., Decedent accepted a dispatch through the app, and she travelled to a restaurant where she picked up an order of food for delivery. The specific time Decedent accepted the dispatch in question presently is unknown to Plaintiff. Having accepted a dispatch through the app, Decedent was then engaged in using her automobile for commercial or business purposes. As a result of such use, Decedent's personal automobile liability insurance would not provide coverage, but Decedent would have been covered by the insurance provided by Defendants Uber and Portier as described in paragraph 16 above.

20.     After leaving the restaurant with the takeout order for delivery, Decedent drove to her destination on Business Interstate 85/U.S. Highway 29 in High Point, North Carolina using the southbound lanes.

5

21.    On September 17, 2022 at approximately 2:13 p.m., a 2002 Chevrolet truck being driven by Joshua Nicholas Anderson was proceeding on Business Interstate 85/U.S. Highway 29 in High Point. North Carolina using the northbound lanes between Durand Avenue and Baker Road. Upon information and belief, Plaintiff alleges and says that Anderson was driving at a speed in excess of the posted speed limit for that section of the highway. Thereupon, Anderson lost control of the truck, and the motor vehicle left the highway. After entering the grassy median between the southbound and northbound lanes of traffic, the truck began to roll, and it became airborne as a result thereof. Ultimately, the truck came to rest on top of the automobile being driven by Decedent, and Decedent was killed in the collision.

22.    On September 23, 2022, counsel for Plaintiff gave written notice of representation to Defendant Uber. No response was received from Defendant Uber.

23.    On October 10, 2022, counsel for Plaintiff gave a second written notice of representation to Defendants Uber, as well as to Defendant Progressive. No response was received from Defendant Uber. Defendant Progressive ultimately denied liability alleging that it did not provide coverage.

24.    On October 24, 2022, counsel for Plaintiff requested that Defendant Uber provide copies of all documents pertinent to benefits arising under Decedent's status as an Uber Eats representative who was killed in a motor vehicle accident while engaged in business on behalf of Uber Eats, including a complete copy of her executed contract of employment as a driver for UberEats. No response was received from Defendant Uber.

25.    In accord with the provisions of what Plaintiff believes to be the contract under which Decedent worked as an independent contractor on behalf of Defendants Uber and Portier, on November 8, 2022, counsel for Plaintiff wrote a letter to Defendant Uber in which the following

6

request was made:

> Please accept this letter as a formal request that a pre-arbitration dispute resolution conference be convened in a good-faith effort to resolve any claim which the Estate might have arising from the death of Ms. Williams which occurred while she was on a UberEats dispatch.

No response was received from Defendant Uber.

26. Defendants Uber and Portier have failed and refused to respond at any time and in any manner to any communication from Plaintiff's counsel.

### FIRST CLAIM FOR RELIEF
*(Declaratory Judgment-Contractual Obligation to Provide Insurance)*

27. The allegations of paragraphs 1 through 26 are incorporated by reference herein as if fully set forth.

28. This claim for relief seeks a declaratory judgment pursuant to G.S. § 1-253 *et. seq.* for the purpose of determining questions of actual controversy between Plaintiff and Defendants Uber and Portier, as are more fully set forth above.

29. A genuine controversy exists between the Parties with regard to the application, interpretation, and meaning of the terms of the contract between Decedent, and Defendants Uber and Portier with regard to the obligation of such Defendants to provide third-party liability insurance, uninsured motorist insurance, and underinsured motorist insurance to Decedent and other individuals working as independent contractors available for dispatch and delivery using the app made available to them by Defendants Uber and Portier.

30. Plaintiff is entitled to a declaratory judgment with regard to the application, interpretation, and meaning of the terms of the contract between Decedent and Defendants Uber and Portier with regard to the obligation of such Defendants to provide third-party liability

7

insurance, uninsured motorist insurance, and underinsured motorist insurance to Decedent and other individuals working as independent contractors available for dispatch and delivery using the app made available to them by Defendants Uber and Portier.

## SECOND CLAIM FOR RELIEF
*(Declaratory Judgment-Statutory Obligation to Provide Insurance)*

31.    The allegations of paragraphs 1 through 30 are incorporated by reference herein as if fully set forth.

32.    This claim for relief seeks a declaratory judgment pursuant to G.S. § 1-253 *et. seq.* for the purpose of determining questions of actual controversy between the Parties, as are more fully set forth above.

33.    A genuine controversy exists between the Parties with regard to the application, interpretation, and meaning of the provisions of G.S. §20-279.21(b)(4) as they apply to Defendants Uber, Portier, and Progressive.

34.    G.S. §20-279.21(b)(4) provides, in pertinent part, as follows:

Shall, in addition to the coverages set forth in subdivisions (2) and (3) of this subsection, provide underinsured motorist coverage, to be used only with a policy that is written at limits that exceed those prescribed by subdivision (2) of this subsection. The limits of such underinsured motorist bodily injury coverage shall be equal to the highest limits of bodily injury liability coverage for any one vehicle insured under the policy; provided, however, that (i) the limits shall not exceed one million dollars ($1,000,000) per person and one million dollars ($1,000,000) per accident regardless of whether the highest limits of bodily injury liability coverage for any one vehicle insured under the policy exceed those limits, (ii) a named insured may purchase greater or lesser limits, except that the limits shall exceed the bodily injury liability limits required pursuant to subdivision (2) of this subsection, and in no event shall an insurer be required by this subdivision to sell underinsured motorist bodily injury coverage at limits that exceed one million dollars ($1,000,000) per person and one million dollars ($1,000,000) per accident, and (iii) the limits shall be equal to the limits of uninsured motorist bodily injury coverage purchased pursuant to subdivision (3)

8

of this subsection. When the policy is issued and renewed, the insurer shall notify the named insured as provided in subsection (m) of this section. An "uninsured motor vehicle," as described in subdivision (3) of this subsection, includes an "underinsured highway vehicle," which means a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy. For purposes of an underinsured motorist claim asserted by a person injured in an accident where more than one person is injured, a highway vehicle will also be an "underinsured highway vehicle" if the total amount actually paid to that person under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy. Notwithstanding the immediately preceding sentence, a highway vehicle shall not be an "underinsured motor vehicle" for purposes of an underinsured motorist claim under an owner's policy insuring that vehicle unless the owner's policy insuring that vehicle provides underinsured motorist coverage with limits that are greater than that policy's bodily injury liability limits. For the purposes of this subdivision, the term "highway vehicle" means a land motor vehicle or trailer other than (i) a farm-type tractor or other vehicle designed for use principally off public roads and while not upon public roads, (ii) a vehicle operated on rails or crawler-treads, or (iii) a vehicle while located for use as a residence or premises. The provisions of subdivision (3) of this subsection shall apply to the coverage required by this subdivision. Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted. Exhaustion of that liability coverage for the purpose of any single liability claim presented for underinsured motorist coverage is deemed to occur when either (a) the limits of liability per claim have been paid upon the claim, or (b) by reason of multiple claims, the aggregate per occurrence limit of liability has been paid. Underinsured motorist coverage is deemed to apply to the first dollar of an underinsured motorist coverage claim beyond amounts paid to the claimant under the exhausted liability policy.

35.    Plaintiff is entitled to a declaratory judgment with regard to the application, interpretation, and meaning of the provisions of G.S. §20-279.21(b)(4) as they apply to Defendants Uber, Portier, and Progressive, and any obligation which such statute imposes upon Defendants to

9

provide third-party liability insurance, uninsured motorist insurance, and underinsured motorist insurance to Decedent and other individuals working as independent contractors available for dispatch and delivery using the app made available to them by Defendants Uber and Portier.

### THIRD CLAIM FOR RELIEF
*(Declaratory Judgment-Right to Compel Arbitration)*

36.     The allegations of paragraphs 1 through 35 are incorporated by reference herein as if fully set forth.

37.     Attached hereto and incorporated by reference herein as Exhibit A is a document procured from the website maintained by Defendants Uber and Portier. Upon information and belief, Plaintiff alleges and says that such contract governed the business relationship between Decedent and Defendants Uber and Portier by providing a comprehensive set of obligations and responsibilities owed to independent contractors such as Decedent.

38.     Such contract requires that an individual or entity asserting a claim under its terms must first request that the matter be addressed in an informal dispute resolution process.

39.     In accord with the provisions of what Plaintiff believes to be the contract under which Decedent worked as an independent contractor on behalf of Defendants Uber and Portier, on November 8, 2022, counsel for Plaintiff wrote a letter to Defendant Uber in which the following request was made:

> Please accept this letter as a formal request that a pre-arbitration dispute resolution conference be convened in a good-faith effort to resolve any claim which the Estate might have arising from the death of Ms. Williams which occurred while she was on a UberEats dispatch.

No response was ever received from Defendant Uber.

40.     Section 2(a)(1) of what Plaintiff believes to be the contract under which Decedent worked as an independent contractor on behalf of Defendants Uber and Portier provides as follows:

Covered Disputes: Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) your access to or use of the Services at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to the Terms, and regardless whether you allege that the personal injury was experienced by you or anyone else; and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law. This Arbitration Agreement survives after your relationship with Uber ends.

41.    Section 2(d) of what Plaintiff believes to be the contract under which Decedent worked

as an independent contractor on behalf of Defendants Uber and Portier provides as follows:

Pre-Arbitration Dispute Resolution and Notification. The parties agree that good-faith informal efforts to resolve disputes often can result in a prompt, low-cost, and mutually beneficial outcome. The parties therefore agree that, before either party demands arbitration against the other, we will personally meet and confer, via telephone or videoconference, in a good-faith effort to resolve informally any claim covered by this Arbitration Agreement. Multiple individuals initiating claims cannot participate in the same informal telephonic dispute resolution conference. If you are represented by counsel, your counsel may participate in the conference, but you shall also fully participate in the conference. The party initiating the claim must give notice to the other party in writing of their intent to initiate an informal dispute resolution conference, which shall occur within 60 days after the other party receives such notice, unless an extension is mutually agreed upon by the parties. To notify Uber that you intend to initiate an informal dispute resolution conference, write to Uber Technologies, Inc., Attn: Legal Department,1515 3rd Street, San Francisco, CA 94158, providing your name, the telephone number(s) associated with your Uber account (if any), the email address(es) associated with your Uber account, and a description of your claim. Engaging in an informal dispute resolution conference is a condition precedent that must be fulfilled before commencing arbitration, and the Arbitrator shall dismiss any arbitration demand filed before completion of an informal dispute resolution conference. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the informal dispute resolution process required by this paragraph.

42.    The letter of November 8, 2022 from counsel to Defendant Uber satisfies the

prerequisite action required by Section 2(d).

43.    Defendants Uber and Portier have failed and refused to respond in any manner to any

communication from Plaintiff and Plaintiff's counsel.

44. This claim for relief seeks a declaratory judgment pursuant to G.S. § 1-253 *et. seq.* for the purpose of determining questions of actual controversy between the Parties, as are more fully set forth above.

45. A genuine controversy exists between the Parties with regard to the application, interpretation, and meaning of the contract between Decedent and Defendants Uber and Portier with regard to the obligation of the Parties to submit disputes arising under such contract to binding arbitration.

46. Plaintiff is entitled to a declaratory judgment with regard to the application, interpretation, and meaning of the terms of the contract between Decedent and Defendants Uber and Portier with regard to the obligation of the Parties to submit disputes arising under such contract to binding arbitration.

## FOURTH CLAIM FOR RELIEF
*(Order Compelling Arbitration)*

47. The allegations of paragraphs 1 through 46 are incorporated by reference herein as if fully set forth.

48. Upon information and belief, Plaintiff alleges and says that the terms of the contract between Decedent and Defendants Uber and Portier with regard to the obligation of the Parties to submit disputes arising under such contract to binding arbitration are binding and valid in all respects.

49. Upon information and belief, Plaintiff alleges and says that there is nothing unconscionable, either procedurally or substantively, with respect to the agreement to arbitrate. Moreover, the agreement to arbitrate is mutual, requiring both parties to submit their claims to arbitration. The agreement to arbitrate, together with the rules under which the arbitration is to

12

proceed, vests the arbitrator with broad authority to order and grant any remedy or relief that would otherwise be available from a federal or state court in the State of North Carolina.

50.     Defendants Uber and Portier have ignored all communications from Plaintiff and his counsel, and such conduct is tantamount and equivalent to a refusal to engage in arbitration. Therefore, Plaintiff is entitled to entry of a judgment compelling Defendants Uber and Portier to submit this dispute to binding arbitration under the agreement to arbitrate, together with the rules under which the arbitration is to proceed.

WHEREFORE, Plaintiff respectfully prays the Court:

1.     That this verified complaint be taken as an affidavit in the cause;

2.     That a declaratory judgment be entered with regard to the application, interpretation, and meaning of the terms of the contract between Decedent and Defendants Uber and Portier with regard to the obligation of such Defendants to provide third-party liability insurance, uninsured motorist insurance, and underinsured motorist insurance to Decedent and other individuals working as independent contractors available for dispatch and delivery using the app made available to them by Defendants Uber and Portier;

3.     That a declaratory judgment be entered with regard to the with regard to the application, interpretation, and meaning of the provisions of G.S. §20-279.21(b)(4) as they apply to Defendants Uber, Portier, and Progressive, and any obligation which such statute imposes upon Defendants to provide third-party liability insurance, uninsured motorist insurance, and underinsured motorist insurance to Decedent and other individuals working as independent contractors available for dispatch and delivery using the app made available to them by Defendants Uber and Portier;

4.     That a declaratory judgment be entered regard to the application, interpretation, and

13

meaning of the terms of the contract between Decedent and Defendants Uber and Portier with regard to the obligation of the Parties to submit disputes arising under such contract to binding arbitration;

5. That a judgment be entered compelling Defendants Uber and Portier to submit this dispute to binding arbitration under the Parties' agreement to arbitrate, together with the rules under which the arbitration is to proceed;

6. That the costs of this action, together with such an award of counsel fees as might be authorized by law or contract, be taxed against Defendants; and

7. That Plaintiff have such other and further relief as to the court might seem just and reasonable.

Respectfully submitted, this __16th__ day of January 2023.

WILLIAM E. WEST, JR.
North Carolina State Bar Number 8559
3000 Bethesda Place, Suite 703
Winston-Salem, North Carolina 27103
(336) 659-9636
wewlaw@bellsouth.net
*Attorney for Plaintiff*

14

You agree that you will not use Uber's trademarks, service marks, or trade dress or any similar names, marks, or trade dress ("Uber's Marks"), aside from use incidental to your use of the Services, without express, written permission from Uber. This prohibition on using Uber's Marks includes, but is not limited to, use in domain names, websites, and social media accounts.

## 4. Access and Use of the Services

User Accounts.

In order to use most aspects of the Services, you must register for and maintain an active personal user Services account ("Account"). You must be at least 18 years of age, or the age of legal majority in your jurisdiction (if different than 18), to obtain an Account, unless a specific Service permits otherwise. You cannot register for or maintain an Account if you have previously been banned from accessing or using the Services. Account registration requires you to submit to Uber certain personal information, such as your name, address, mobile phone number and age, as well as at least one valid payment method supported by Uber. For more information regarding Uber's use of your personal information, please see our Privacy Notice currently available at https://privacy.uber.com/policy/. You agree to maintain accurate, complete, and up-to-date information in your Account, including a valid phone number, address and payment method. Your failure to comply with these Terms (including policies and supplemental terms) including, without limitation, your failure to maintain accurate, complete, and up-to-date Account information, including having an invalid or expired payment method on file, may result in your inability to access or use the Services. You are responsible for all activity that occurs under your Account, and you agree to maintain the security and secrecy of your Account username and password at all times. Unless otherwise permitted by Uber in writing, you may only possess one Account.

User Requirements and Conduct.

You agree to abide by the Uber Community Guidelines, available here. Failure to comply with the Community Guidelines or any violation of these terms may result in the permanent loss of access to the Services.

The Services are not available for use by persons under the age of 18. You may not authorize third-parties to use your Account, and you may not allow persons under the age of 18 to request or receive transportation, delivery or logistics services from Third-Party Providers unless they are accompanied by you. You may not assign or otherwise transfer your Account to any other person or entity. You agree to comply with all applicable laws when accessing or using the Services, and you may only access or use the Services for lawful purposes (e.g., no request for the purpose or intent of transport of unlawful or hazardous materials).

You may not in your access or use of the Services cause nuisance, annoyance, inconvenience, or property damage, whether to the Third-Party Provider or any other party. If you request a ride option with a car seat, you acknowledge and agree that neither Uber nor the Third-Party Provider is responsible for the safety of a child restraint/car seat that may be available in the Third-Party Provider's Vehicle. You acknowledge and agree that it is your obligation to ensure that the car seat is installed correctly and that the child is properly secured in the seat. If you request a ride option where a driver agrees to provide you with assistance outside of the vehicle (e.g., Uber Assist), you acknowledge and agree that neither Uber nor the Third-Party Provider is responsible for any injury or incident that may arise out of the assistance provided by the Third-Party Provider. In certain instances, you may be asked to provide proof of age, identity or other method of identity verification to access or use the Services, and you agree that you may be denied access to or use of the Services if you refuse to provide proof of age, identity or other method of identity verification.

Subject to the discretion of a Third-Party Provider, you may be allowed to bring a small animal, such as a dog or cat, on a ride requested through the Uber Marketplace Platform. For such trips, you are responsible for properly securing the animal with a leash, harness, crate / carrier, or through other means. You are also responsible for ensuring that the animal does not cause damage or a mess in the Third-Party Provider's vehicle. You may be subject to a Charge for Repair or Cleaning under Section 5 for any damage or mess caused by an animal that is transported during a ride requested under your Account. Please note, in accordance with Uber's policies on Service Animals and assistive devices, Service Animals are generally permitted to accompany riders without extra charge, regardless of whether it is a Pet Friendly Trip.

For the purpose of assisting us with our compliance and insurance obligations, you agree to notify us within 24 hours and provide us with all reasonable information relating to any incident or accident that occurs during your use of the Services and you agree to cooperate with any investigation and attempted resolution of such incident.

Text Messaging and Telephone Calls.

You agree that Uber Technologies, Inc., and its subsidiaries, representatives, affiliates, officers and directors, may contact you by telephone or text messages (including by an automatic telephone dialing system and/or with an artificial or pre-recorded voice) at any of the phone numbers provided by you or on your behalf in connection with an Uber account, including for marketing purposes. You understand that you are not required to provide this consent as a condition of purchasing any property, goods or services. You also understand that you may opt out of receiving text messages from Uber at any time, either by replying "STOP", texting the word "STOP" to 89203 using the mobile device that is receiving the messages, or by contacting

help.uber.com. If you do not choose to opt out, Uber may contact you as outlined in its User Privacy Notice, located at https://www.uber.com/privacy/notice.

You agree that Uber may contact you using any of the phone numbers you provided in connection with an Uber account (including via text or voice-recorded message) or your email address in the case of suspected fraud or unlawful activity.

User Provided Content.

Uber may, in Uber's sole discretion, permit you from time to time to submit, upload, publish or otherwise make available to Uber through the Services textual, audio, and/or visual content and information, and submission of entries for competitions and promotions ("User Content"). Any User Content provided by you remains your property. However, by providing User Content to Uber, you grant Uber a worldwide, perpetual, irrevocable, transferable, royalty-free license, with the right to sublicense, to use, copy, modify, create derivative works of, distribute, publicly display, publicly perform, and otherwise exploit in any manner such User Content in all formats and distribution channels now known or hereafter devised (including in connection with the Services and Uber's business and on third-party sites and services), without further notice to or consent from you, and without the requirement of payment to you or any other person or entity.

You represent and warrant that: (i) you either are the sole and exclusive owner of all User Content or you have all rights, licenses, consents and releases necessary to grant Uber the license to the User Content as set forth above; and (ii) neither the User Content, nor your submission, uploading, publishing or otherwise making available of such User Content, nor Uber's use of the User Content as permitted herein will infringe, misappropriate or violate a third-party's intellectual property or proprietary rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.

You agree to not provide User Content that is defamatory, libelous, hateful, violent, obscene, pornographic, unlawful, or otherwise offensive, as determined by Uber in its sole discretion, whether or not such material may be protected by law. Uber may, but shall not be obligated to, review, monitor, and remove User Content, at Uber's sole discretion and at any time and for any reason, without notice to you.

User Feedback.

As Uber respects your rights to your ideas, you agree that you will not submit any confidential ideas, information, or suggestions in any form to Uber or any of its affiliates. For any ideas, information, or suggestions you do submit, regardless of what your communication regarding your submissions says, you understand that your submissions are voluntary and the

following terms shall apply to your submissions: (i) your submissions and their contents will automatically become the property of Uber, without any compensation to you; (ii) Uber has no obligation to review your submissions; (iii) Uber may implement and distribute any portion of your submissions and their contents for any purpose in any way, without any compensation to you; and (iv) Uber has no obligation to keep your submissions confidential.

Network Access and Devices.

You are responsible for obtaining the data network access necessary to use the Services. Your mobile network's data and messaging rates and fees may apply if you access or use the Services from your device. You are responsible for acquiring and updating compatible hardware or devices necessary to access and use the Services and Applications and any updates thereto. Uber does not guarantee that the Services, or any portion thereof, will function on any particular hardware or devices. In addition, the Services may be subject to malfunctions and delays inherent in the use of the Internet and electronic communications.

## 5. Payment

You understand that use of the Services may result in charges to you for the services or goods you receive from Uber and/or from Third-Party Providers ("Charges"). You acknowledge that prices displayed to you when purchasing goods through the Services may be inclusive of retail prices charged by the Third-Party Provider and service fees paid to Uber. Uber will enable your payment of the applicable Charges for services or goods obtained through your use of the Services. Charges will include applicable taxes where required by law. Charges may include other applicable fees such as delivery fees, service fees, product return fees, cancellation fees, government-mandated fees (such as bag fees), estimated or actual tolls, and/or surcharges. Further, you acknowledge and agree that Charges applicable in certain geographical areas may increase substantially during times of high demand or due to other marketplace factors.

All Charges and payments will be enabled by Uber using the preferred payment method designated in your Account, after which you will receive a receipt. If your primary Account payment method is determined to be expired, invalid or otherwise not able to be charged, you agree that Uber may use a secondary payment method in your Account, if available. Charges paid by you are final and non-refundable, unless otherwise determined by Uber.

As between you and Uber, Uber reserves the right to establish or adjust Charges for any or all services or goods obtained through the use of the Services at any time. Uber will use reasonable efforts to inform you of Charges that may apply, provided

that you will be responsible for Charges incurred under your Account regardless of your awareness of such Charges or the amounts thereof. Certain users may from time to time receive promotional offers and discounts that may result in different amounts charged for the same or similar services or goods obtained through the use of the Services, and you agree that such promotional offers and discounts, unless also made available to you, shall have no bearing on your use of the Services or the Charges applied to you. Promotional offers and discounts are subject to change or withdrawal at any time and without notice. You may elect to cancel your request for Services at any time prior to the commencement of such Services, in which case you may be charged a cancellation fee on a Third-Party Provider's behalf.

With respect to Third-Party Providers, Charges you incur will be owed directly to Third-Party Providers, and Uber will collect payment of those charges from you, on the Third-Party Provider's behalf as their limited payment collection agent, and payment of the Charges shall be considered the same as payment made directly by you to the Third-Party Provider. In such cases, you retain the right to request lower Charges from a Third-Party Provider for services or goods received by you from such Third-Party Provider at the time you receive such services or goods, and Charges you incur will be owed to the Third-Party Provider. Uber will consider in good faith any request from a Third-Party Provider to modify the Charges for a particular service or good. This payment structure is intended to fully compensate a Third-Party Provider, if applicable, for the services or goods obtained in connection with your use of the Services. Except for amounts provided by you through the Application as part of the "tip" feature, Uber does not designate any portion of your payment as a tip or gratuity to a Third-Party Provider. You understand and agree that, while you are free to provide additional payment as a gratuity to any Third-Party Provider who provides you with services or goods obtained through the Service, you are under no obligation to do so. There also may be certain Charges you incur that will be owed and paid directly to Uber or its affiliates. For the avoidance of doubt, Uber does not charge a fee for a user to access the Uber Marketplace Platform, but may charge users a fee or any other Charge for accessing Services made available through the Marketplace Platform. Even if not indicated on the Uber Marketplace Platform, you understand that the prices for product or menu items displayed through the Services may differ from the prices offered or published by Third-Party Providers for the same product or menu items and/or from prices available at other third-party websites/mobile applications. Prices for product or menu items displayed through the Services may not be the lowest prices at which the product or menu items are sold. You also understand that product or menu item prices displayed through the Services or fees charged by and paid to Uber may vary based on whether you choose to pick up your order or have it delivered.

If you think a correction should be made to any Charge you incurred, you must let Uber know in writing within 30 days after the Charge took place or Uber will have no further responsibility and you waive your right to later dispute the amounts charged.

Damage, Cleaning, Lost and Found, and Violation of Terms.

Uber may charge you a fee on behalf of Third-Party Providers if, during your use of the Services, you have caused damage to a vehicle or property that requires repair or cleaning ("Repair" or "Cleaning"). The amount of such fee shall be determined, in Uber's sole discretion, based on the type of damage and the severity. Uber reserves the right to verify or otherwise require documentation of damages prior to processing a fee. In the event that a Repair or Cleaning request is verified by Uber in Uber's reasonable discretion, Uber reserves the right to facilitate payment for the reasonable cost of such Repair or Cleaning using your payment method designated in your Account. Such amounts, as well as those pertaining to lost and found goods, will be transferred by Uber to a Third-Party Provider, if applicable, and are non-refundable.

Additionally, if you fail to comply with these Terms, you may be responsible for Charges, including without limitation, for transactions that could not be completed properly, arising out of or in connection with your failure to comply with these Terms.

## 6. Disclaimers; Limitation of Liability; Indemnity.

Disclaimer.

THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. IN ADDITION, UBER MAKES NO REPRESENTATION, WARRANTY, OR GUARANTEE REGARDING THE RELIABILITY, TIMELINESS, QUALITY, SUITABILITY, OR AVAILABILITY OF THE SERVICES OR ANY SERVICES OR GOODS REQUESTED THROUGH THE USE OF THE SERVICES, OR THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE.

UBER DOES NOT GUARANTEE THE QUALITY, SUITABILITY, SAFETY OR ABILITY OF THIRD-PARTY PROVIDERS. YOU AGREE THAT THE ENTIRE RISK ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY SERVICE OR GOOD REQUESTED OR OBTAINED FROM THIRD-PARTY PROVIDERS IN CONNECTION THEREWITH, REMAINS SOLELY WITH YOU, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW.

UBER DOES NOT CONTROL, MANAGE OR DIRECT ANY THIRD-PARTY PROVIDERS INCLUDING DRIVERS. THIRD-PARTY PROVIDERS ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES OF UBER.

UBER DOES NOT CONTROL, ENDORSE OR TAKE RESPONSIBILITY FOR ANY USER CONTENT OR THIRD-PARTY CONTENT AVAILABLE ON OR LINKED TO BY THE SERVICES. UBER CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR SERVERS ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

Limitation of Liability.

UBER SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF UBER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD-PARTY PROVIDER, EVEN IF UBER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. UBER SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND UBER'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME UBER SERVICES MAY OFFER RIDESHARING OR PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS ARE NOT OSTENSIBLE AGENTS, APPARENT AGENTS, ACTUAL AGENTS, OR EMPLOYEES OF UBER.

THE SERVICES MAY BE USED BY YOU TO REQUEST AND SCHEDULE TRANSPORTATION, GOODS, OR LOGISTICS SERVICES WITH THIRD-PARTY PROVIDERS, BUT YOU AGREE THAT UBER HAS NO RESPONSIBILITY OR LIABILITY TO YOU RELATED TO ANY TRANSPORTATION, GOODS OR LOGISTICS SERVICES PROVIDED TO OR NOT PROVIDED TO YOU BY THIRD-PARTY PROVIDERS OTHER THAN AS EXPRESSLY SET FORTH IN THESE TERMS.

UBER SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF LACK OF OR IMPROPER INSTALLATION OR USE OF CHILD RESTRAINT SYSTEMS FOR GUESTS ON RIDES REQUESTED THROUGH THE SERVICES FOR WHOM A CHILD RESTRAINT SYSTEM IS LEGALLY REQUIRED.

THE LIMITATIONS AND DISCLAIMERS IN THIS SECTION DO NOT PURPORT TO LIMIT LIABILITY OR ALTER YOUR RIGHTS AS A CONSUMER THAT CANNOT BE EXCLUDED UNDER APPLICABLE LAW. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH

STATES OR JURISDICTIONS, UBER'S LIABILITY SHALL BE LIMITED TO THE EXTENT PERMITTED BY LAW. THIS PROVISION SHALL HAVE NO EFFECT ON UBER'S CHOICE OF LAW PROVISION SET FORTH BELOW.

Indemnity.

You agree to indemnify and hold Uber and its affiliates and their officers, directors, employees, and agents harmless from and against any and all actions, claims, demands, losses, liabilities, costs, damages, and expenses (including attorneys' fees), arising out of or in connection with: (i) your use of the Services or services or goods obtained through your use of the Services; (ii) your breach or violation of any of these Terms; (iii) Uber's use of your User Content; or (iv) your violation of the rights of any third party, including Third-Party Providers.

# 7. Other Provisions

Choice of Law.

These Terms shall be governed by and construed in accordance with the laws of the state in which your dispute arises, without regard to the choice or conflict of law principles of any jurisdiction, except as may be otherwise provided in the Arbitration Agreement in Section 2 above or in supplemental terms applicable to your region. This Choice of Law provision applies only to the interpretation of these Terms, and these provisions shall not be interpreted as generally extending any state's law to you if your dispute did not arise in that state.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident occurred.

Choice of Forum.

Any dispute, claim or controversy arising out of or relating to these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, shall be brought exclusively in the state and federal courts of the state in which the dispute, claim or controversy arose, notwithstanding that other courts may have jurisdiction over the parties and subject matter, except as may be otherwise provided by the Arbitration Agreement above or in supplemental terms applicable to your region.

Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be brought exclusively in the state or federal courts in the State in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement above or in supplemental terms applicable to your region, to the extent permitted by law.

The foregoing Choice of Law and Choice of Forum provisions do not apply to the Arbitration Agreement in Section 2, and we refer you to Section 2 for the applicable provisions for such disputes.

Claims of Copyright Infringement.

Claims of copyright infringement should be sent to Uber's designated agent. Please visit Uber's web page at https://www.uber.com/legal/intellectual-property/copyright/global for the designated address and additional information.

Notice.

Uber may give notice by means of a general notice on or through the Services, electronic mail to the email address associated with your Account, telephone or text message to any phone number provided in connection with your account, or by written communication sent by first class mail or pre-paid post to any address connected with your Account. Such notice shall be deemed to have been given upon the expiration of 48 hours after mailing or posting (if sent by first class mail or pre-paid post) or at the time of sending (if sent by email, telephone, or on or through the Services). You may give notice to Uber, with such notice deemed given when received by Uber, at any time by first class mail or pre-paid post to our registered agent for service of process, c/o Uber Technologies, Inc. The name and current contact information for the registered agent in each state are available online at https://www.wolterskluwer.com/en/solutions/ct-corporation/sop-locations. If another provision of these Terms addresses any specific notice (for example, notice of updates to these Terms, or notice of a dispute or arbitration demand), those specific notice provisions shall prevail to the extent there is any conflict or inconsistency between those provisions and this notice provision.

General.

You may not assign these Terms without Uber's prior written approval. Uber may assign these Terms without your consent to: (i) a subsidiary or affiliate; (ii) an acquirer of Uber's equity, business or assets; or (iii) a successor by merger. Any purported

assignment by you in violation of this section shall be void. No joint venture, partnership, employment, or agency relationship exists between you, Uber or any Third-Party Provider as a result of this Agreement or use of the Services. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law. Uber's failure to enforce any right or provision in these Terms shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing. This provision shall not affect the Severability and Survivability section of the Arbitration Agreement of these Terms.

## Return to Legal Hub→

Uber

Visit Help Center

Do not sell my info (California)

Google Data Policy

## Company

About us

Our offerings

Newsroom

Investors

Blog

Careers

AI

Gift cards

## Products

Ride

Drive

Deliver

Eat

Uber for Business

Uber Freight

## Global citizenship

Safety

Diversity and Inclusion

## Travel

Airports

Cities

English

Piedmont Triad




© 2022 Uber Technologies Inc.

Privacy                    Accessibility                    Terms